**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**DOMINIC CENTONZE,**

                                        **Plaintiff,**

        **vs.**                                                **1:19-CV-1017**
                                                               **(MAD/ATB)**

**OTSEGO COUNTY DEPUTY SHERIFF AND**
**INVESTIGATOR JASON MUNSON, in his**
**Individual Capacity, OTSEGO COUNTY**
**PROBATIONS OFFICER AND SUPERVISOR**
**TIMOTHY E. DEFOREST, in his Individual Capacity,**
                                        **Defendants.**

_____

**APPEARANCES:**                        **OF COUNSEL:**

**DOMINIC CENTONZE**
**18-B-2867**
Greene Correctional Facility
Post Office Box 975
Coxsackie, New York 12051
Plaintiff _pro se_

**JOHNSON & LAWS, LLC**                **COREY A. RUGGIERO, ESQ.**
648 Plank Road                        **LORAINE CLARE JELINEK, ESQ.**
Suite 204
Clifton Park, New York 12020
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On August 19, 2019, Plaintiff _pro se_ Dominic Centonze ("Plaintiff"), an inmate currently

in the custody of the New York State Department of Corrections and Community Supervision

("DOCCS"), commenced this action under 42 U.S.C. § 1983 alleging that Defendants violated his

federal constitutional rights under the First, Eighth, and Fourteenth Amendments, as well as

alleging state law claims including negligent inflection of emotional distress and negligence. *See* Dkt. No. 1 at 6–11.

On October 25, 2019, Defendants filed a motion to dismiss the complaint, arguing that the complaint must be dismissed based on applicable immunity doctrines, applicable conditions precedent, and the lack of a plausible claim against Defendants. *See* Dkt. No. 5-1 at 1. Thereafter, on November 1, 2019, Plaintiff filed a letter motion for an extension of time to file a response to Defendants' motion to dismiss. *See* Dkt. No. 6. The Court granted this request, extending Plaintiff's response date to December 23, 2019. *See* Dkt. No. 7. Plaintiff filed a response with the Court on January 9, 2020, *see* Dkt. No. 9, which the Court accepted. *See* Dkt. No. 12.

## II. BACKGROUND

Plaintiff's claims arise from a series of events stemming from his November 3, 2017 guilty plea to unlawful surveillance in the second degree. *See* Dkt. No. 1 at ¶¶ 7–8. Plaintiff was sentenced to six months in the Otsego County Jail and received a ten-year term of supervised probation. *See id.* at ¶ 9. Plaintiff was sentenced in accordance with the terms of the original plea agreement on March 30, 2018, which was later modified on April 6 of the same year to vacate the portion of his sentence that required him to register as a sex offender. *See id.* at ¶¶ 10–12. Plaintiff was released from custody on April 9, 2018. *See id.* at ¶ 13. At this time, Plaintiff's computer, which had previously been seized from him in connection with his underlying conviction, was returned to him by Defendant Jason Munson, Otsego County Deputy Sheriff and Investigator. *See* Dkt. No. 5-1 at 2.

On April 12, 2018, Defendant Timothy E. DeForest, an Otsego County Probation Officer and Supervisor, visited Plaintiff's home. *See* Dkt. No. 5-1 at 2. During the course of that visit,

Defendant DeForest discovered illicit materials contained on the computer owned and possessed by Plaintiff. *See id.* Plaintiff alleges that this was the same computer "that had been returned to him two days earlier" by Defendant Munson. *See* Dkt. No. 1 at ¶ 15. Plaintiff further alleges that Defendant DeForest located material that he believes should have been removed by Defendant Munson before releasing the computer back to Plaintiff, but was not. *See id.* at ¶ 16. Plaintiff indicates that he had explained this to Defendant DeForest during the home visit, but that Defendant DeForest "failed to verify Plaintiff's statement with Defendant Munson, or Defendant's attorney Randal Scharf, which Plaintiff immediately informed of the contents of the computer as soon as he became aware of it's [sic] existence." *See id.* at ¶ 23.

On April 24, 2018, a violation report was filed with the Otsego County Court, whereupon the terms of Plaintiff's probation were modified, including a requirement that Plaintiff needed to wear a tracking device. *See id.* at ¶ 18. "[B]ased upon information gleaned from the tracking device," Defendant DeForest filed a Violation of Probation Petition with the Otsego County Court on May 7, 2018. *Id.* at ¶ 19. On July 13, 2018, the Court held a hearing based upon Defendant DeForest's report, whereupon Plaintiff testified that the computer given to Plaintiff contained "pre-trial arrest material which the Plaintiff was convicted for." *Id.* at ¶¶ 21–22.

After the hearing on July 13, 2018, Plaintiff alleges that he suffered severe depression and requested that Defendant DeForest permit him to see his psychotherapist, Charlotte Black. *See id.* at ¶ 24. Plaintiff alleges that, despite his insistence that he felt suicidal, Defendant DeForest continually denied this request, ultimately leading to Plaintiff's attempted suicide by carbon monoxide poisoning. *See id.* at ¶ 24. Plaintiff also alleges that Defendant DeForest retained medical records from a neurologist after a visit with this doctor, which prevented Plaintiff from being able to receive additional medical testing at Bassett Hospital. *See id.* at ¶¶ 26–27. Plaintiff

further alleges that Defendant DeForest refused to allow Plaintiff to attend church services at a particular church in Cooperstown, New York,"without cause, or a probation stipulation which . . . required Plaintiff to refrain from religious services." *Id.* at ¶ 28. Plaintiff contends that these events occurred as a result of Defendant Munson's returning a computer to Plaintiff with illicit material on it from Plaintiff's underlying offense, and Defendant DeForest's refusal to include information relating to the same in his violation report. *See generally* Dkt. No. 1.

Although it is not entirely clear, the Court has construed Plaintiff's complaint as raising the following claims: (1) a substantive due process claim under the Fourteenth Amendment relating to the return of Plaintiff's computer with illicit material and subsequent probation violation; (2) denial of medical care in violation of the Eighth and Fourteenth Amendments; (3) denial of the right to attend religious services in violation of the First Amendment; (4) conspiracy to violate Plaintiff's civil rights; and (5) selective enforcement and treatment in violation of the Fourteenth Amendment.

### III. DISCUSSION

**A.    Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111–12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may

consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *Twombly*, 550 U.S. at 558, 570.

Despite this recent tightening of the standard for pleading a claim, complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted). As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002) (quotation omitted).

**B.** **Consideration of the Otsego County Probation Department Order and Conditions of Probation and Updated Pre-Sentence Investigation Report**

In both Defendants' motion to dismiss and Plaintiff's response to the motion to dismiss, additional documents were filed by the parties. Both Defendants and Plaintiff submitted a copy of the Otsego County Probation Department Order and Conditions of Probation in the matter of *The People of the State of New York vs. Dominic J. Centonze, Probationer*, Otsego County Court of the State of New York, Docket #: 2017-052. *See* Dkt. No. 5-2; Dkt. No. 9 at 21–26. Plaintiff additionally submitted an Updated Pre-Sentence Investigation Report dated October 22, 2018, signed by Defendant DeForest. *See* Dkt. No. 9 at 12–17.

The Court is normally confined to consider only the complaint and "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits" on a Rule 12(b)(6) motion to dismiss. *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effects, which renders the document integral to the complaint." *Chambers*, 282 F.3d at 153.

In the present matter, the Court finds that it is appropriate to consider both the Otsego County Probation Department Order and Conditions of Probation as well as the Updated Pre-Sentence Investigation Report. This is because "the harm to [a party] when a court considers material extraneous to a complaint is the lack of notice that the material may be considered." *Id.* (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)). These documents were also "in [the other party's] possession or of which [the other party] had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.3d 142, 150 (2d

Cir. 1993). Because Plaintiff and Defendants attached the same document, the Otsego County Probation Department Order and Conditions of Probation, it is clear that there was notice of the material being considered. Additionally, both documents were heavily incorporated by reference in the complaint. As such, the Court will consider both documents when determining the merits of Defendants' motion.

## C. Defendant DeForest's Entitlement to Absolute Immunity

Initially, Defendant DeForest moves to dismiss Plaintiff's complaint on the ground that, when filing a Violation of Probation Petition, probation officers are entitled to absolute immunity inasmuch as they are acting as an arm of the judiciary. *See* Dkt. No. 5-1 at 4–7.

"As a general matter, probation officers are entitled to immunity in the performance of their duties, but the type of immunity afforded depends on whether 'the duties of the defendants were judicial or prosecutorial, which entitles them to absolute immunity, or administrative, which may entitle them to qualified immunity.'" *Dettelis v. Sharbaugh*, 919 F.3d 161, 164 (2d Cir. 2019) (quoting *King v. Simpson*, 189 F.3d 284, 288 (2d Cir. 1999)). Probation officers are entitled to absolute immunity in "initiating parole revocation proceedings and in presenting the case for revocation to hearing officers." *Dettelis*, 919 F.3d at 164 (quoting *Scotto v. Almenas*, 143 F.3d 105, 112 (2d Cir. 1998)). "By contrast, in performing investigatory duties, for example, the filing of a violation report or recommending the issuance of an arrest warrant, a parole officer is entitled only to qualified immunity." *Dettelis,* 919 F.3d at 164; *see also Scotto*, 143 F.3d at 111; *Roberts ex rel. Estate of Roberts v. Lapp*, 297 Fed. Appx. 67, 69 (2d Cir. 2008) (holding state parole officer entitled to qualified immunity in recommending issuance of a parole warrant); *Malik v. Mackey*, 268 Fed. Appx. 83, 84 (2d Cir. 2008) (holding state parole officer entitled to qualified immunity when filing parole violation charges).

In the context "of the issuance of a Violation of Probation, . . . it is the judge who actually signs the Violation of Probation and makes the determination to issue the arrest warrant[,]" not the probation officer in question. *Gelatt v. Cnty. of Broome*, 811 F. Supp. 61, 68 (N.D.N.Y. 1993); N.Y. Crim. Proc. Law § 410.40(2) ("Where the probation officer has requested that a probation warrant be issued, the court shall . . . issue or deny the warrant . . . .").

"The cases regarding the preparation and filing of probation- and parole-violation reports . . . explain that such supervisory conduct is investigatory in nature, and, therefore, comparable to the role of a police officer rather than that of a judge or prosecutor." *Saint-Guillen v. United States*, 657 F. Supp. 2d 376, 382 (E.D.N.Y. 2009); *see also Gelatt*, 811 F. Supp. at 69 (holding that "absolute immunity is not available 'for one whose complaint causes a warrant to issue'") (quoting *Malley v. Briggs*, 475 U.S. 335, 340 (1986)).

Defendant DeForest argues that the filing of a violation report and/or a violation of Probation Petition initiated the prosecution of Plaintiff's probation violation, that he therefore engaged in a prosecutorial function, and is subsequently entitled to absolute immunity. *See* Dkt. No. 5-1 at 6–7. However, based upon the Court's review of Second Circuit precedent, the issuance of a Violation of Probation or a probation violation report is more often considered to be engaging in investigatory conduct, which is not entitled to absolute immunity. As such, the Court is not inclined to afford Defendant DeForest absolute immunity at this time.

## D. Plaintiff's Failure to Satisfy Conditions Precedent

To the extent that Plaintiff's complaint alleges state tort claims for negligent infliction of emotional distress and negligence, Defendants contend that Plaintiff's claims should be dismissed due to failure to satisfy conditions precedent. *See* Dkt. No. 5-1 at 7–11.

As a general rule, "state notice-of-claim statutes apply to state-law claims" asserted as pendant claims in a federal action. *Hardy v. NYC Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (citing *Felder v. Casey*, 487 U.S. 131, 151 (1988); *Fincher v. Cnty. of Westchester*, 879 F. Supp. 989, 1002 (S.D.N.Y. 1997) (noting that New York's 90-day notice-of-claim requirement applies to state tort claims brought as pendent claims in a federal action)). "Pursuant to New York General Municipal Law § 50-e, a plaintiff who asserts a state law tort claim against a municipal entity or its employees for acts that occurred within the scope of their employment must file a notice of claim within ninety days after the incident giving rise to the claim." *Maier v. New York City Police Dep't*, No. 08-CV-5104, 2009 WL 2915211, *3 (E.D.N.Y. Sept. 1, 2009). "Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy*, 164 F.3d at 793–94.

In order to survive a motion to dismiss, a plaintiff "must plead that: (1) a notice of claim was served; (2) at least thirty days elapsed since the notice of claim was filed and before the complaint was filed; and (3) in that time, the defendant neglected to or refused to adjust or satisfy the claim." *Coggins v. Cnty. of Nassau*, 988 F. Supp. 2d 231, 251 (E.D.N.Y. 2013). "The plaintiff bears the burden of demonstrating compliance with the notice of claim requirement." *Chabot v. Cnty. of Rockland, New York*, No. 18-CV-4109, 2019 WL 3338319, *9 (S.D.N.Y. July 25, 2019).

Here, Plaintiff has failed to allege that he met the notice of claim requirements to pursue negligent infliction of emotional distress and negligence claims against both Defendants for alleged acts committed within the scope of their employment as an Otsego County Deputy Sheriff and Investigator and an Otsego County Probations Officer and Supervisor. Plaintiff has also

submitted no justification for the failure to file a notice of claim. Accordingly Plaintiff's seventh, eighth, ninth, and tenth causes of action must be dismissed. *See Lopez v. City of New York*, No. 15-CV-7292, 2018 WL 2744705, *14 (E.D.N.Y. June 7, 2018) (dismissing the plaintiffs' state claims because they "did not allege in their complaint that at least thirty days elapsed between when the notice of claim was served and when they filed suit . . . . While dismissal might seem like a harsh sanction for such a pleading omission, the statutory text is clear").

## E.  Defendants' Personal Involvement in Injurious "State Action"

It is well established that "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). If the defendant is a supervisory official, a mere linkage to the unlawful conduct under the doctrine of *respondeat superior* is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325–26 (1981); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam). In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (citations omitted). The personal involvement of a supervisory official may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or

10

custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

In *Ashcroft v. Iqbal*, the Supreme Court held that, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The Court rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution," because that "conception of 'supervisory liability' is inconsistent with [the principle that supervisors] may not be held accountable for the misdeeds of their agents." *Id.* at 677. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*

A plaintiff may establish that a defendant was personally involved in the underlying alleged conduct by showing that the defendant "(i) personally participated in the alleged constitutional violation, (ii) was grossly negligent in supervising subordinates who committed the wrongful acts, or (iii) exhibited deliberate indifference to the rights of the plaintiff by failing to act on information indicating that unconstitutional acts were occurring." *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (citing *Colon*, 58 F.3d at 873).

At this time, the Court finds that the complaint sufficiently alleges the personal involvement of Defendant DeForest. The complaint alleges that Defendant DeForest examined Plaintiff's computer during a visit to Plaintiff's residence on April 12, 2018, located illicit material on Plaintiff's computer that allegedly was not removed by Defendant Munson, and filed a

violation report on April 24, 2018. *See* Dkt. No. 1 at ¶¶ 15–17. The complaint further alleges that "Plaintiff had informed Defendant Deforest at the home visit on April 12th, 2018, that the computer was given to him by Defendant Jason Munson with the illicit material still contained on it . . . and failed to verify Plaintiff's statement with Defendant Munson, or Defendant's attorney Randal Scharf . . . .." *Id.* at ¶ 23. In light of the allegations in the complaint and Plaintiff's *pro se* status, the Court finds that Plaintiff has alleged sufficient facts to survive this argument with respect to Defendant DeForest.

Defendants assert that Plaintiff conceded that Defendant Munson should be dismissed because he is not mentioned in Plaintiff's opposition memorandum. *See* Dkt. No. 15 at 2. In his complaint, Plaintiff only alleges that he "was provided with computer equipment by Defendant Otsego County Deputy Sheriff Munson that was seized from Plaintiff's home . . . [and that the computer] continued to possess images and recordings that were the basis of the Plaintiff's conviction for Unlawful Surveillance in the Second Degree." Dkt. No. 1 at ¶ 14. Plaintiff's claims ultimately relate to events taking place after Defendant Munson allegedly returned a computer to Plaintiff. There are no facts alleging that Defendant Munson was the individual responsible for the removal of any materials from Plaintiff's computer. As such, the Court finds that Plaintiff has not alleged sufficient facts to survive this argument with respect to Defendant Munson.

## F.     Eighth Amendment

The Eighth Amendment forbids the imposition of punishment that is "cruel and unusual." U.S. Const. amend. VIII. Plaintiff claims that his rights under the Eighth Amendment were violated by Defendants because they denied him access to medical care, including "failed[ure] to

promptly allow Plaintiff to see his psychotherapist, despite the fact defendant was aware of Plaintiff's mental health status." Dkt. No. 1 at ¶¶ 38, 43.

"[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *See Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). At the time that the alleged Eighth Amendment violations occurred in this case, Plaintiff was not incarcerated or institutionalized, having been released from custody on April 9, 2018. *See* Dkt. No. 1 at ¶ 13. Plaintiff's claims that Defendants were deliberately indifferent are thus appropriately analyzed under the Fourteenth Amendment, not the Eighth. *See, e.g.*, *McGhie v. Main*, No. 11–CV–3110, 2011 WL 4852268, *5 (E.D.N.Y. Oct. 12, 2011) (denying deliberate indifference claim where plaintiff, who was on supervised released, "was not incarcerated or institutionalized when, as he alleges, he was deprived of necessary psychiatric care.... The fact that such psychiatric care was a condition of [Plaintiff]'s supervised release does not alter the analysis").

As such, Plaintiff's deliberate indifference claims under the Eighth Amendment are dismissed against both Defendants.

## H.    Fourteenth Amendment

Although Plaintiff generally raised a claim under the Fourteenth Amendment, *see* Dkt. No. 1 at ¶ 34, he asserted a substantive due process theory for the first time with regards to his deliberate indifference claim in his response to the pending motion. *See* Dkt. No. 9 at 6. While Defendants argue that the Court should not recognize this claim as opposition papers are generally an inappropriate channel by which to advance new claims, *see R.S. v. Bd. of Educ. Shenendehowa Cent. Sch. Dist.*, No. 1:17-CV-0501, 2017 WL 6389710, *6 (N.D.N.Y. Dec. 13, 2017), as Plaintiff

generally addressed the Fourteenth Amendment in his *pro se* complaint, the Court will address this argument briefly.

Generally, to establish a substantive due process violation, a plaintiff must (1) identify the constitutional right at stake and (2) demonstrate that the government's action were conscience-shocking or arbitrary in the constitutional sense. *See Little v. City of New York*, 487 F. Supp. 2d 426, 443 (S.D.N.Y. 2007) (citing *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994)). The "shock the conscience" standard is not easily met; the plaintiff must show that the government's conduct was "'egregious'" and "'outrageous,'" "not merely incorrect or ill-advised." *Ferran v. Town of Nassau*, 471 F.3d 363, 369–70 (2d Cir. 2006) (quotation omitted).

To satisfy his or her burden, a plaintiff must demonstrate that the defendant's actions were "so egregious, so outrageous, that [they] may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998); *see also Matican v. City of New York*, 524 F.3d 151, 158 (2d Cir. 2008). Official conduct "must be truly brutal and offensive to human dignity." *Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007) (internal quotation marks and citation omitted). In *Lewis*, the Supreme Court noted that intentionally inflicted injuries are the "most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849. On the other end of the spectrum, the Supreme Court has emphasized that "negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.*; *see also Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (distinguishing between intentionally inflicted harms, which are likely to rise to conscience shocking level, and negligently inflicted harms, which cannot constitute conscience-shocking behavior).

To the extent that Plaintiff's complaint can be read to assert a claim against Defendant DeForest for a violation of his substantive due process rights, the Court finds that the claim must be dismissed. Plaintiff has failed to plead any facts plausibly suggesting conduct so egregious as to constitute a violation of substantive due process. In his complaint and opposition papers, Plaintiff acknowledges that he was provided with regular and continuing medical treatment during the course of his probation. *See* Dkt. No. 15 at 6 n.6. Plaintiff also had the opportunity to petition the Otsego County Court to seek the ability to travel to different doctors' offices or religious services. *See* Dkt. No. 5-2 at ¶ 21. While Plaintiff criticizes the decisions of Defendant DeForest, he fails to allege conduct that transgressed the "outer limit" of legitimate governmental action or that is fairly viewed as so "brutal" and "offensive to human dignity" that it shocks the conscience. *See Cohn v. New Paltz Cent. Sch. Dist.*, 363 F. Supp. 2d 421, 434 (N.D.N.Y. 2005) (citations omitted).

The only conduct that Defendant Munson could potentially be personally involved in relates to returning the computer to Plaintiff without first ensuring that the illicit material was removed from it. Plaintiff's complaint makes clear, however, that Defendant Munson acted negligently when he returned the computer to Plaintiff. Since Plaintiff is not alleging that Defendant Munson placed this evidence on the computer himself, Plaintiff is not bringing a more common fabrication of evidence claim. Rather, the Court can also construe Plaintiff's claim with regards to Defendant Munson as a general substantive due process claim. "[N]egligently inflicted harm is categorically beneath the threshold" for a substantive due process claim and even conduct exhibiting "deliberate indifference ... demands an exact analysis of circumstances before any abuse of power is condemned as conscience-shocking," *Lombardi*, 485 F.3d at 82 (quotation

omitted). Because Plaintiff has failed to plead any facts which could merit such condemnation, his substantive due process claim against Defendant Munson must be dismissed.

As such, Plaintiff's deliberate indifference claims under the Fourteenth Amendment are dismissed against both Defendants.

## I. First Amendment

Plaintiff alleges that Defendant DeForest "refused to allow Plaintiff to attend church service for the pastor Dane Boston, at the Episcapal [sic] church in Cooperstown, NY. Plaintiff requested as soon as he was released to start attending church, however, Defendant Deforest denied him without cause, or a probation stipulation which would required Plaintiff to refrain from religious services." Dkt. No. 1 at ¶ 28. Defendants allege that Plaintiff's ability to attend church services was curtailed at the time Plaintiff was convicted of a felony offense, that he gave up his rights to attend church services of his choosing, and that Plaintiff possessed the ability to petition the Otsego County Court to attend the services of his choice. *See* Dkt. No. 15 at 6–7.

"First Amendment rights may be curtailed only by the least drastic means." *United States v. Kahane*, 396 F. Supp. 687, 699 (E.D.N.Y. 1975) (citations omitted). "Any limitation on exercise of religious freedom rights must be as narrow as practicable and clearly related to an appropriate governmental need. Limitations must affect prisoners and parolees with 'the least denigration of the human spirit and mind consistent with the needs of a structured correctional society.'" *United States v. Hernandez*, 209 F. Supp. 3d 542, 546 (E.D.N.Y. 2016) (quoting *Kahane*, 396 F. Supp. at 702) (failing to provide Jewish prisoner with kosher meals deprived him of his First Amendment right)). "A condition that prevents defendant from attending his place of worship because minors attend the same services is not the least drastic

means of ensuring the public's safety. It violates defendant's right to religious observance."
*Hernandez*, 209 F. Supp. 3d at 546.

Presently, it does not appear that there is a condition of Plaintiff's probation that relates specifically to church services; rather, Plaintiff must "stay away from places where children under 17 years of age are known to congregate, including but not limited to parks, schools playgrounds, arcades, or any other area deemed inappropriate . . . ." Dkt. No. 5-2 at ¶ 42. Defendants similarly allege that "Plaintiff's rights to travel to . . . church services (let alone a particular church that was in the town where Plaintiff's victim, an infant male, was a resident and may have attended the same church) of his choosing and on Plaintiff's own schedule were undisputedly curtailed at the time that Plaintiff was convicted . . . ." Dkt. No. 15 at 6–7 (original emphasis removed).

Plaintiff "has a right to attend church services. Preventing him from going to his place of worship because the services are also attended by minors unnecessarily burdens that right." *Hernandez*, 209 F. Supp. 3d at 547. Defendants have provided no legal justification for this limitation beyond speculation that Plaintiff's victim "may have attended the same church," which is not sufficient to survive a motion to dismiss. Dkt. No. 15 at 6. Additionally, this information is not properly before the Court on a motion to dismiss. At this stage, in light of Plaintiff's *pro se* status and the facts alleged in Plaintiff's complaint, the Court is inclined to allow Plaintiff's claim under the First Amendment to proceed against Defendant DeForest.

## J.    The Merits of Plaintiff's Conspiracy Claim

Plaintiff alleges that Defendants "conspired to violate Plaintiff's statutory civil rights in violation of 42 U.S.C.A. § 1983 . . . ." Dkt. No. 1 at ¶ 47. "'To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act

done in furtherance of that goal causing damages.'" *Benitez v. Ham*, No. 9:04-CV-1159, 2009 WL 3486379, *18 (N.D.N.Y. Oct. 21, 2009) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). A violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right. *See Malsh v. Austin,* 901 F. Supp. 757, 763–64 (S.D.N.Y. 1995) (citation omitted). Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights. *See id.*; *see also Friends of Falun Gong v. Pacific Cultural Enter., Inc.*, 288 F. Supp. 2d 273, 279 (E.D.N.Y. 2003) (citations omitted); *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) (citation omitted).

To withstand a motion to dismiss, the conspiracy claim must contain more than "'conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights[.]'" *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (quotation omitted); *Shabazz v. Pico*, 994 F. Supp. 460, 467 (S.D.N.Y. 1998) (holding that a mere allegation of conspiracy with no facts to support it cannot withstand a motion to dismiss). Specifically, the plaintiff must provide some factual basis supporting a "meeting of the minds," such as that the defendants "entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999). "Diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977).

Plaintiff's conspiracy claim is supported by only conclusory and vague allegations of a conspiracy, which is insufficient to state a plausible claim. *See Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (citing cases). Plaintiff merely alleges that Defendants "conspired to violate Plaintiff's statutory civil rights." Dkt. No. 1 at ¶ 47. Such conclusory assertions are clearly

insufficient to state a plausible conspiracy claim. Based on the foregoing, the Court grants Defendants' motion as to Plaintiff's conspiracy claim against both Defendants.

## K.    Selective Enforcement

Although Plaintiff's claim of selective enforcement is far from clear, it appears that Plaintiff is attempting to allege that Defendant DeForest violated his rights under the Fourteenth Amendment by unfairly enforcing his conditions of supervised release.

To establish a selective enforcement claim against a state actor, plaintiffs must show

> (1) that they were treated differently from other similarly situated individuals, and
>
> (2) that such differential treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"

*Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (quotations omitted); *accord Posr v. Pascale*, No. 15 Civ. 584, 2017 WL 1366004, *5 (E.D.N.Y. Apr. 12, 2017).

In the present matter, Plaintiff has failed to plausibly allege facts supporting either element of this claim. Specifically, as to the second element, nothing in the complaint supports the inference that Defendants' actions were based on impermissible considerations or that they were undertaken in a bad faith effort with the intent to injure Plaintiff. Simply put, Plaintiff's conclusory allegations fall far short of asserting a selective enforcement claim.[1]

---

[1] Although not raised in Defendants' motion to dismiss, under 28 U.S.C. § 1915(e)(2), a court "may *sua sponte* dismiss a claim if it is frivolous, malicious, or fails to state a claim." *Hartnett v. Tetreault*, No. 9:07-cv-952, 2009 WL 2971576, *3 (N.D.N.Y. Sept. 11, 2009); *see also Rodriguez v. Goord*, No. 9:06-CV-1288, 2009 WL 3122951, *2 (Sept. 28, 2009).

**L.      Defendants' Entitlement to Qualified Immunity**

Qualified immunity "'protects public officials performing discretionary functions from personal liability in a civil suit for damages insofar as their conduct does not violate clearly established or constitutional rights of which a reasonable person would have known.'" *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 162 (2d Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).  A public official is entitled to qualified immunity where his or her conduct does not implicate a constitutional right or where the conduct at issue does not violate a clearly established constitutional right.  *See Lore*, 670 F.3d at at 166 (citing *Harlow*, 457 U.S. at 818).

For a constitutional right to be clearly established, its "contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks and citations omitted).  Qualified immunity provides protection "to all but the plainly incompetent or *those who knowingly violate the law*." *Vincent*, 718 F.3d at 166 (internal quotation marks and citations omitted).  An official's actions are not protected by qualified immunity by virtue of the fact that his or her action in question has not previously been held unlawful.  *See Hope*, 536 U.S. at 739; *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014).  "[I]f decisions from this or other circuits clearly foreshadow a particular ruling on the issue," the Court may treat the law as clearly established.  *Terebesi*, 764 F.3d at 231 (internal quotation marks omitted).

Qualified immunity is an affirmative defense and, as such, Defendants bear the burden of proving that the privilege of qualified immunity applies.  *See Vincent*, 718 F.3d at 166; *Coolick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012).  The Second Circuit has made clear that it disfavors granting qualified immunity at the motion to dismiss stage.  *See McKenna v. Wright*, 386 F.3d

432, 435 (2d Cir. 2004) (citing *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983) (noting that generally "the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted"). Notably, a defendant asserting a qualified immunity defense on a motion to dismiss "faces a formidable hurdle . . . and is usually not successful." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006). In this regard, the defense will succeed only where entitlement to qualified immunity can be established "based [solely] on the facts appearing on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

"Although a mere mistake in the performance of an official duty may not deprive the officer of qualified immunity, the doctrine does not shield performance that either (a) was in violation of clearly established law, or (b) was plainly incompetent." *Manganiello v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010) (citations omitted). "With respect to both the legal question and the matter of competence, the officials' actions must be evaluated for objective reasonableness. . . . That is, '[e]ven if the right at issue was clearly established in certain respects . . . an officer is still entitled to qualified immunity if "officers of reasonable competence could disagree" on the legality of the action at issue in its particular factual context.'" *Id.* (quotations omitted).

In their motion, Defendants generally contend that "both Defendants are entitled to qualified immunity as a matter of law since there was no 'clearly established law' on April 10, 2018, which imposed an affirmative obligation upon Munson to become the *de facto* information technology consultant for Plaintiff and to remove illicit materials from Plaintiff's computer prior to returning it to him." Dkt. No. 5-1 at 22. Similarly, Defendants argue that "there was no clearly

established law in April 2018 which compelled DeForest to include in his report information which was extraneous to the actual stated grounds for the revocation of Plaintiff's probation." *Id.*

Having already dismissed the stated claims against Defendant Munson, the Court declines to address the qualified immunity issue as to him. As to Defendant DeForest, the only remaining claim is that Defendant DeForest denied Plaintiff the right to attend religious services in violation of the First Amendment. Since the application of qualified immunity was not addressed in the pending motion as to this claim, Defendants' motion to dismiss on this ground is denied.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part as set forth above;[2] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 13, 2020
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[2] Based on the foregoing, the only claim that survives at this stage is Plaintiff's claim of denial of religious services under the First Amendment against Defendant DeForest.